158 So.2d 107

**Ex parte Isaac GODFREY.**

**6 Div. 707.**

Supreme Court of Alabama.

May 30, 1963.

Rehearing Denied Dec. 12, 1963.

Cabaniss & Johnston, Leigh M. Clark and L. Murray Alley, Birmingham, for respondent.

Rives, Peterson, Pettus & Conway, and Thos. Seay, Birmingham, for petitioner.

LIVINGSTON, Chief Justice.

This is an original petition for peremptory writ of mandamus filed in this Court by Isaac Godfrey against Honorable Ingram Beasley, as Judge of the Circuit Court of Jefferson County, Alabama, to command him to allow an amendment of the complaint in that certain cause styled: Isaac Godfrey,

Plaintiff, v. Southern Railway Company, a Corporation, Defendant, now pending in the Circuit Court of Jefferson County, Alabama, at law.

The complaint as originally filed, on September 10, 1957, contained one count, Count 1, and is brought under the Federal Employers' Liability Act.

On October 2, 1959, petitioner filed an amendment to the complaint consisting of two counts, A and B. The amendment was disallowed on the theory that it alleged matters which constituted a departure from the original complaint, both under the state law and the federal statute, and because it was offensive to the substantive law of the Federal Employers' Liability Act in that it was barred by the limitations of Title 45, Sec. 56, U.S.C.A.

█ The only real issue presented by the petition and subsequent pleadings is whether respondent properly disallowed the amendment containing Counts A and B.

This Court issued a rule nisi and the respondent, Honorable Ingram Beasley, as Judge of the Circuit Court of Jefferson County, Alabama, has filed a demurrer to the petition and also an answer. In his answer, the respondent attached to and made a part thereof, certain answers of the plaintiff to interrogatories propounded to him by defendant.

Count 1 of the complaint reads as follows:

"Plaintiff claims of the defendant the sum of, to wit, Fifteen Thousand and No/100 ($15,000.00) Dollars, as damages, for that heretofore, on to wit, the 11th day of September, 1956, the defendant was engaged in the operation of a railroad in Interstate Commerce and plaintiff was employed by such carrier in such commerce and while engaged in and about his duties as such employee on the premises of defendant at its Norris Yards, at or near Irondale, in Jefferson County, Alabama, the plaintiff stepped in some acid which had been spilled on the floor by some

servant, agent, or employee of defendant whose name is to plaintiff unknown, and as a direct and proximate result thereof the plaintiff suffered acid burns on his feet and suffered great physical pain and mental anguish; was caused to lose a large amount of time and money in and about trying to treat, cure and heal his said injuries; suffered fear of losing his life, was caused to lose his right leg, which had to be amputated, and plaintiff was rendered permanently less able to earn a living.

"And plaintiff avers that all of his said damages and injuries were suffered as a direct and proximate result of the negligence of the officers, agents or employees of defendant in and about allowing said acid to be and remain on said floor, or in failing to provide a reasonably safe place for plaintiff to work, hence this suit."

Counts A and B, the proposed amendment, read as follows:

"COUNT A:

"The plaintiff claims of the defendant the sum of Fifty Thousand ($50,000.00) Dollars, as damages, for that heretofore on, to wit, the 11th day of September, 1956, and for a period of, to wit, 15 years prior thereto, plaintiff was employed by the defendant as a laborer and during said period of employment the defendant was a common carrier by railroad and as such common carrier was engaged in the business of operating a railroad for the transportation of freight and passengers in interstate commerce and plaintiff avers that a part of his duties as such aforesaid employee of the defendant were in furtherance of such aforesaid interstate commerce or directly or closely and substantially affected such interstate commerce and plaintiff avers that on, to wit, the 2nd day of April, 1945, while plaintiff was firing a steam locomotive for the de-

fendant at the Finley Shops of the defendant in the City of Birmingham, Jefferson County, Alabama, plaintiff's body and limbs were badly burned, resulting in injury and scarring of the skin on plaintiff's body and limbs, and plaintiff avers that he is an ignorant negro and that he did not know, but that the defendant knew or by the exercise of reasonable diligence should have known, that to thereafter assign plaintiff to work where his body and limbs would be exposed to coal soot, fuel oil, lubricating oil, heavy petroleum greases and chromate compounds would be unsafe and dangerous to the health or limbs of plaintiff, and plaintiff avers that after such aforesaid injury and scarring of his body and limbs, the defendant caused plaintiff to be assigned to work at the said Finley Shops of the defendant and thereafter to work at the Diesel Shop of the defendant in the Norris Yard of the defendant at Irondale in Jefferson County, Alabama, where plaintiff's body and limbs were almost daily exposed to either coat soot, or fuel oil or lubricating oil or heavy petroleum greases or chromate compounds during and over period of, to wit, ten years immediately prior to the 11th day of September, 1956, and plaintiff avers that during and over the said ten year period he was thereby caused to be injured by the defendant to such extent that during the year 1956 and prior to the commencement of this suit, the accumulated effects of said injuries were such that the same manifested themselves by causing a skin cancer on plaintiff's right foot which necessitated the removal of plaintiff's right foot and part of his right leg by surgical operation on, to wit, the 29th day of September, 1956, and plaintiff was thereby caused to suffer great physical pain and mental anguish and was caused to be maimed and crippled for life and he was caused to lose his job with the defendant and plaintiff's power and capacity to work and earn mon-ey was permanently impaired; and plaintiff avers that all of his aforesaid injuries and damages proximately resulted, in whole or in part, from the negligence of the officers, agents, or employees of the defendant, while acting within the line and scope of their employment by the defendant, or by reason of a defect or insufficiency due to the negligence of the defendant in its engines, works, machinery, appliances or other equipment. Plaintiff avers that this cause of action is based upon and brought under an Act of the Congress of the United States generally referred to as the Federal Employers' Liability Act, Title 45, U.S. C.A., Section 51."

"COUNT B:

"For COUNT 'B' of plaintiff's complaint, the plaintiff adopts the allegations of COUNT 'A' of his complaint down to and including the allegation 'plaintiff's power and capacity to work and earn money was permanently impaired;' and for this COUNT 'B' plaintiff adds the following additional allegations, viz: 'and plaintiff avers that all of his aforesaid injuries and damages proximately resulted, in whole or in part, from the negligence of the defendant in that the defendant negligently failed to exercise reasonable care to furnish or maintain plaintiff a reasonably safe place to perform his aforesaid work for the defendant. Plaintiff avers that this cause of action is based upon and brought under an Act of the Congress of the United States generally referred to as the Federal Employers' Liability Act, Title 45, U.S. C.A., Sec. 51."

It is to be noted that the original complaint was filed in this cause on September 10, 1957, and alleges that the injuries sued for occurred on the 11th day of September, 1956, and that the amendment was filed on October 2, 1959, and amended on December 2, 1959, more than three years after the in-

juries are alleged to have occurred in the original complaint.

While our statute on amendments, Sec. 239, Title 7, Code 1940, is broad and liberal, it is the creation of the lawmaking power. It provides that "The court must, whilst the cause is in progress, * * * permit the amendment of the complaint * * * by striking out or adding new counts or statements of the cause of action, * * *" etc.; the limitation placed upon the right of the amendment being, that by it there shall not be wrought a different cause of action or an entire change of parties.

Sec. 220, Title 7, Code 1940, provides that all actions ex delicto may be joined in the same suit. But there is nothing in that section relative to amendments after the suit is filed. Amendments are controlled entirely by Sec. 239, supra.

Petitioner argues that since all the counts, both original and amendatory, allege the ultimate loss of plaintiff's right leg that both complaints allege the same injury. But a careful analysis proves otherwise.

Count 1 alleges that plaintiff's right foot was burned when he stepped in acid, naming the specific time, place and circumstances. If the plaintiff stepped in the acid through the breach of some duty by defendant, a cause of action at that instance arose in favor of plaintiff and against the defendant.

A perusal of the amendatory counts demonstrates that they are based on entirely other breaches of duty at different times and places. The ultimate loss of plaintiff's leg is unquestionably an element of his damages, just as are medical expenses and loss of wages, but they are *not injuries* giving rise to the cause of action.

The plaintiff's original complaint states a cause of action which would entitle plaintiff to recover without proof of the loss of the leg as an element of damage. In the amendatory counts, the injury alleged is the contracting of cancer. The invasion of plaintiff's person is alleged to be the exposure and contact with the alleged irritants, which, according to the complaint, was such that "the same manifest themselves by causing a skin cancer." The ultimate loss of the foot or leg is the element of damages arising from that injury.

So far as the Alabama law is concerned, we are clear to the conclusion that the case of Isbell v. Bray, 256 Ala. 1, 53 So.2d 577, is controlling in the instant case. It was said in that case, in quoting from the case of Gaines v. Birmingham Ry., Light & Power Co., 164 Ala. 6, 51 So. 238:

" 'The question of the right to amend, and what constitutes a departure, has been rather a perplexing one, and upon which this court has not been entirely harmonious. But, the majority holding in the case of Alabama [Consol. Coal & Iron] Co. v. Heald, 154 Ala. 580, 45 So. 686, which has been since cited approvingly by this court, and the case of Alabama [Terminal & Improvement] Co. v. Hall, 152 Ala. 262, 44 So. 592, are conclusive on this subject, and the rule there laid down has been approvingly emphasized by a change in the * * * Code of 1907 (section 5367), from what it was in section 3331 of the Code of 1896. In the Heald case, supra, we held the criteria to be as follows: "A new cause of action is not set up by amendment, within the rule governing the statute of limitations in such cases, where the same substantial facts are pleaded merely in a different form, so that a recovery on either count of the complaint would bar a recovery on the other. * * * As long as the plaintiff adheres to the contract or the injury originally declared upon, an alteration of the modes in which the defendant has broken the contract or caused the injury is not an introduction of a new cause of action. The test is whether the proposed amendment is a different matter, another subject of

controversy, or the same matter more fully or differently laid to meet the possible scope * * * of the testimony." '

"In dealing with amendments perhaps some of our cases lack accuracy in the employment of the term 'new cause of action' as being synonymous with the term 'entirely new cause of action,' or 'a different and independent cause of action.' This apparent confusion is, at least, not lessened in some of our cases dealing with the question of when an amendment to the original complaint relates back to the institution of the suit in respect to the application of the statute of limitations.

"But the statute of limitations is not presently involved in the case at bar and we lay to one side the consideration of that question.

\* \* \* \* \* \*

"The statements made in Bridwell v. Brotherhood of Railroad Trainmen, 227 Ala. 443, 150 So. 338, with respect to adding new counts by amendment to a complaint at law which introduce a new cause of action, must be taken in connection with the situation there under consideration. It was not intended to declare that a new count could be added by amendment containing a new and distinct cause of action which was inconsistent with the cause of action alleged in the original counts, or which would otherwise be a departure from that originally stated. Plaintiff with such a status confronting him must stand on his original cause of action or bring a new suit. There cannot be an entire change of the cause of action nor an entire change of parties. Spurling v. Fillingim, 244 Ala. 172, 12 So.2d 740. This is accomplished if the new count adds a cause of action which is inconsistent with or a departure from the original cause of action.

"The statute, section 239, Title 7, Code 1940, does not otherwise prohibit amendments which add new causes of action. Haynes v. Phillips, 211 Ala. 37, 99 So. 356."

■ We are clear to the conclusion in the instant case that the amendatory counts added a cause of action which was inconsistent with and a departure from the original complaint. While that status appears on the fact of the pleadings, the motion to strike the amendment or an exception to its allowance is a proper remedy.

To illustrate further, we set out a part of the interrogatories filed by the defendant to the plaintiff and his answers thereto in which said interrogatories and answers were attached to and made a part of Judge Beasley's answer to the rule nisi:

"1-7. State the date you were injured.

"Ans. September 11, 1956.

"1-8. State the time of day you were injured.

"Ans. About 11:00 A.M.

"1-9. State the place where you were injured.

"Ans. In white men's restroom at diesel shop of defendant at its Norris Yard.

"11-13. State whether or not at the and place you were injured there was any defect or insufficiency of any of the works of the defendant.

"Ans. Yes.

"11-14. If your answer to the next preceding question is in the affirmative, state:

(a) In detail, each and every work that was defective or insufficient.

(b) Each and every defect or insufficiency in each and every work which was defective or insufficient.

(c) How long to your knowledge each and every such defect or insufficiency had existed prior to the time that you were injured.

"Ans. (a) and (b) Floor of white men's restroom was wet with water containing raw acid that had been spilled from a glass container of the defendant and the white men's restroom should have been constructed so that water would not accumulate on the floor as it had on the occasion of my injury.

(c) Do not know how long acid had been in water but men's restroom was same as constructed at the time Norris Yard was built by defendant.

"11–26. State each and everything which you claim constitute a failure on the part of the defendant to provide you with a reasonably safe place to work.

"Ans. The white men's restroom was not a reasonably safe place for me to do the work assigned by the company."

We now turn to a discussion of the permissible limits for amendments in a FELA case after the statute of limitations has run.

The Supreme Court of the United States stated in the case of Seaboard Air Line Ry. Co. v. Renn, 241 U.S. 290, 36 S.Ct. 567, 60 L.Ed. 1006, as follows:

"* * * The defendant's objection was that the original complaint did not state a cause of action under the act of Congress, that with the amendment the complaint would state a new cause of action under that act, and that, as more than two years [now three years] had elapsed since the right of action accrued, the amendment could not be made the medium of introducing this new cause of action consistently with the provision in § 6 that 'no action shall be maintained under this act unless commenced within two years from the day the cause of action accrued.' *Whether in what was done this restriction was in effect disregarded is a Federal question* and subject to re-ex-

amination here, however much the allowance of the amendment otherwise might have rested in discretion or been a matter of local procedure * * *." (Emphasis supplied.)

To the same effect is Atlantic Coast Line R. Co. v. Burnette, 239 U.S. 199, 36 S.Ct. 75, 60 L.Ed. 226, and the more recent state cases of Williams v. Trustees of New York N., H. & H. R. Co., 325 Mass. 244, 90 N.E. 2d 320, and Graham v. Atlantic Coast Line R. Co., 240 N.C. 338, 82 S.E.2d 346.

■ This Court must decide the issue of the permissibility of the amendment as concerns the statute of limitations on the basis of the controlling federal decisions.

In the case of Baltimore & Ohio S. W. R. Co. v. Carroll, 280 U.S. 491, 50 S.Ct. 182, 74 L.Ed. 566, the Supreme Court of the United States stated:

"In respect of the statute of limitations, that court (trial court) held that the challenged amendment did not introduce a new cause of action, but was a mere amplification of the original complaint and related back to the commencement of the action. In support of the ruling, reliance was had upon the decisions of this court that neither an amendment for the first time setting up the right of the plaintiff to sue as personal representative, M[issouri], K. & Tex. Ry. Co. v. Wulf, 226 U.S. 570, 33 S.Ct. 135, 57 L.Ed. 355, Ann.Cas.1914B, 134, nor an amendment for the first time alleging that the parties were engaged in interstate commerce, N[ew] Y[ork] Cent. R. R. Co. v. Kinney, 260 U.S. 340, 43 S.Ct. 122, 67 L.Ed. 294, introduces a new cause of action. *Each of these decisions proceeds upon the ground that the amendment did not set up any different state of facts as the ground of action,* and therefore it related back to the beginning of the action. In the Kinney Case it was pointed out that the original declaration was consistent with a wrong under either state or federal

law, as the facts might turn out, and that the acts constituting the tort were the same whichever law gave them that effect.

"But here two distinct causes of action are involved, one for the loss and suffering of the injured person while he lived, and another for the pecuniary loss to the beneficiaries named in the act as a result of his death. * * *" (Emphasis supplied.)

In the above case, although the facts giving rise to each cause of action were identical, the court held that the different and distinct injuries arising from the same negligent acts constituted separate causes of action.

By proper analysis of the instant case, it is clear that not only are the injuries different, as previously demonstrated, but the occurrences or facts leading up to those injuries are different.

In the words of the court in the Carroll case, supra, distinguishing the cases of Wulf and Kinney, the amendment in the instant case unquestionably sets up an entirely "different state of facts as the ground of action."

In the case of Seaboard Air Line Ry. Co. v. Renn, supra, the court approved an amendment after the statute had run, adding a specific allegation that the defendant was engaged in interstate commence and plaintiff was employed in such commerce at the time of his injury. The court was careful to point out that the complaint was consistent with the cause of action under the Federal Employers' Liability Act, and that the amendment merely expanded or amplified what was already alleged in that cause of action and did not in any way change a basic fact as alleged in the original complaint. A similar result was reached in Tiller v. Atlantic Coast Line R. Co., 323 U.S. 574, 65 S.Ct. 421, 89 L.Ed. 465. Concerning the amendment, the court stated:

"* * * The original complaint in this case alleged a failure to provide a proper lookout for deceased, to give him proper warning of the approach of the train, to keep the head car properly lighted, to warn the deceased of an unprecedented and unexpected change in the manner of shifting cars. The amended complaint charged the failure to have the locomotive properly lighted. Both of them related to the same general conduct, transaction and occurrence which involved the death of the deceased. There was therefore no departure. The cause of action now, as it was in the beginning, is the same—it is a suit to recover damages for the alleged wrongful death of the deceased. * * *"

It is to be noted that the amendment in the Tiller case, supra, did not change the time, place, nature or manner of injury.

Petitioner argues that both the original and amended complaints contained general averments of failure to furnish plaintiff a reasonably safe place to work. But it is clear that the general averment, alleging only a conclusion of the pleader, that the defendant was negligent in failing to provide a reasonably safe place for plaintiff to work must be referred to and limited by the facts alleged concerning the time, place, nature and manner of plaintiff's injury.

If it be assumed that the sole difference in the two complaints in the instant case is the allegation of negligence, the fact in the case of Kansas Gas & Electric Co. v. Evans, 10 Cir., 100 F.2d 549, cert. denied 306 U.S. 665, 59 S.Ct. 790, 83 L.Ed. 1061, are strikingly similar. The original complaint alleged the projection of the vault doors above the flush of the sidewalk, and generally alleged that the defendant was negligent in allowing the door to remain in a defective condition. The plaintiff amended the complaint alleging the defective condition was the fact that the door projected above the level of the sidewalk and that such projection, coupled with the ice and sleet which had formed upon it, constituted a hazard. Later, after the statute of limita-

tions had run, plaintiff attempted to add the claim that the vault door was solid in construction and had not been correctly corrugated to prevent slipping. The court stated:

"It is generally held that an amendment made after the statute has run is not open to objection for introducing a new cause of action where it amplifies or expands the allegations contained in the former pleading or where it merely alleges more fully and in different language the gist of the action previously pleaded. Plaintiff seeks to invoke this doctrine. She argues that the general allegation in the original petition that defendant was negligent in allowing the door to remain in a defective condition was broad enough to include the defect in the corrugations and that the amendment was merely in amplification or expansion of such general allegation. But that will not do. When required to make her pleading definite and specific by setting forth the facts on which she based her claim that the cover was in a defective condition, she affirmatively pleaded in her first amendment to the petition that it was based upon the fact that the door projected above the level of the walk and that such projection, coupled with ice and sleet which had formed upon it, constituted a hazard. She failed to mention in any form the corrugations. That pleading was somewhat in the nature of a bill of particulars. Having thus pleaded specifically concerning the issue, she cannot be heard to say that the general allegation was broad enough to cover the defect in the corrugations."

In the instant case, the answers to interrogatories set out above clearly indicate the limited scope intended by the averment of failure to furnish a safe place to work contained in the original complaint.

In New York C. & H. R. R. Co. v. Kinney, supra, it was stated:

"* * * when a defendant has had notice from the beginning that the plaintiff sets up and is trying to enforce a claim against it because of specified conduct, the reasons for the statute of limitations do not exist. * * *"

Clearly, the defendant in the instant case did not have notice from the beginning of the conduct specified in the amended complaint. See also Tessier v. United States, 1 Cir., 269 F.2d 305.

We think it clear enough that the amended complaint was barred by the provisions of the Federal Employers' Liability Act as interpreted by the controlling federal decisions and was properly disallowed by the respondent.

Assuming without deciding that mandamus was the proper remedy to test the propriety of the respondent's refusal to allow the amendment, we are clear to the conclusion that the rule nisi was improvidently issued, and the peremptory writ is due to be and is denied.

Writ denied.

SIMPSON, MERRILL and HARWOOD, JJ., concur.